IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| PAUL SCOBEY, on behalf of himself and all similarly situated employees, | : CIVIL ACTION : : No.: |
| Plaintiffs, | : Hon. |
| v. | : : |
| GENERAL MOTORS, LLC, A Michigan limited liability company, | : : : |
| Defendant. | : : |

**COLLECTIVE ACTION
COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiff, Paul Scobey, through his undersigned attorneys, and for his Collective Action Complaint against Defendant General Motors, LLC, states as follows:

**INTRODUCTION**

1. This is a collective action brought by Plaintiff Scobey on behalf of himself and all similarly situated current and former employees (collectively "Plaintiffs") to recover damages for Defendant's willful violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and its attendant rules and regulations.

2. Defendant willfully violated the FLSA by knowingly suffering or

permitting Plaintiffs to work in excess of 40 hours per week without paying overtime compensation at a rate of 1.5 times the regular rate.

3. Defendant knew or should have known that Plaintiffs were not exempt under the FLSA and that their employees must be paid at a premium overtime pay rate of not less than 1.5 times the regular rate of pay for all hours worked in excess of forty (40) per week.

4. Plaintiffs seek a declaration that their rights were violated, and a judgment awarding unpaid back wages, liquidated damages, and attorneys' fees and costs to make them whole for damages they suffered, and to help ensure Defendant will not subject workers to the same unlawful conduct in the future.

5. Plaintiff Scobey brings this action on behalf of himself and all similarly situated current and former employees who elect to join this action pursuant to the FLSA, 29 U.S.C. § 216(b), to remedy Defendant's violations of the FLSA.

6. At the earliest time possible, Plaintiffs will move the Court to authorize a proposed notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant during the past three years.

## **JURISDICTION AND VENUE**

7. This Court has subject-matter jurisdiction over Plaintiffs' FLSA

claims, pursuant to 28 U.S.C. § 1331, because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

8. This Court has jurisdiction over this FLSA collective action pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

9. Defendant's annual sales exceed $500,000 and Defendant employs more than two persons, so the FLSA applies in this case on an enterprise basis. Defendant's employees engage in interstate commerce; therefore, they are also covered by the FLSA on an individual basis.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant maintains its headquarters and principal place of business in this District, and because a substantial portion of the events that give rise to Plaintiffs' claims occurred in this District.

## **PARTIES**

11. Plaintiff, Paul Scobey, is a resident of Lake Odessa, Michigan, and currently works for Defendant as a salaried maintenance employee. Plaintiff Scobey's Consent to Join form is attached hereto as ***Exhibit A***.

12. Additional Opt-In Plaintiffs were or are employed by Defendant in similar positions during the past three years and their consent forms will also be

filed in this case.

13. Defendant General Motors, LLC ("GM") is an American multinational corporation that designs, manufactures, markets, and distributes vehicles and vehicle parts.

14. GM is a Delaware limited liability company with its registered agent listed as CSC-Lawyers Incorporating Service and its registered office address listed as 601 Abbot Road, East Lansing, Michigan 48823.

## GENERAL ALLEGATIONS

15. In order to manufacture its products, GM has historically employed several types of hourly, union tradesmen to repair machines as they broke down.

16. Depending on the machines and the nature of the repair, GM called in hourly, union tradesmen who specialized in electrical, mechanical, or other trades to report and repair the machines.

17. In February 2017, Plaintiff Scobey began working for GM as an hourly, union electrician with an hourly rate of $34.72.

18. In or about 2017, GM created the Technical Operations Specialists ("TOS") position and began utilizing TOS employees at numerous GM facilities.

19. The TOS position is a relatively new, experimental maintenance position, which consists of *salaried*, non-union, multi-skilled tradesmen who repair machines as they break down.

20. Upon information and belief, GM designed the TOS position to replace or supplement its hourly skilled tradesmen with the intent of employing a more versatile maintenance group that can quickly react to calls and make any necessary repairs, whether electrical, mechanical, or otherwise.

21. As such, the TOS employees do not follow the normal lines of demarcation as GM's hourly, union skilled tradesmen do. If a machine breaks down, the TOS can repair the machine regardless of what type of tradesman GM would normally call in for the repair in the past.

22. At all times relevant to this Complaint, GM paid its TOS employees on a salary basis.

23. GM initially classified all of its TOS employees as salaried exempt for FLSA purposes.

24. TOS employees are blue collar, skilled tradesmen who may be knowledgeable in one or more trades.

25. TOS employees do not sit or work at a desk. Instead, they work on their feet most of the day performing repetitive mental, manual, physical work in order to keep GM's machines running (*e.g.*, motor replacements, conveyor belt and chain repairs, basic robot maintenance, electrical work, mill and lathe machining, and welding).

26. In March 2018, GM hired Plaintiff Scobey as a salaried, non-union

TOS employee with a base salary of $86,000.

27. At all times relevant to this Complaint, GM tracked its TOS employees' work hours through its timekeeping system, known as TKS.

28. GM required its TOS employees to work "casual OT" which consisted of an extra hour of work at the end of every shift, resulting in a regular 45-hour workweek (at least).

29. GM also required its TOS employees to work additional overtime hours every other Saturday and Sunday.

30. For purposes of determining the TOS employees' overtime hours in a seven-day workweek, GM's written policies establish the calculation based on the calendar week from 12:01 a.m. Monday through midnight Sunday.

31. Despite requiring its TOS employees to work overtime hours, GM failed to pay its TOS employees the appropriate overtime premium at 1.5 times their regular rate of pay.

32. In late 2018, Plaintiff Scobey and other TOS employees began questioning GM's classification of its TOS employees as salaried exempt and they sent several written communications to a GM Human Resources Supervisor asking questions about whether the classification was appropriate and whether the TOS employees were being paid overtime properly under the FLSA.

33. The GM Human Resources Supervisor wrote back confirming that

GM classified its TOS employees as FLSA exempt and added that, due to the number of similar questions from different TOS employees, he had also reached out to "GM corporate staff" to review the matter.

34. In March 2019, without explanation, GM re-classified its TOS employees as salaried non-exempt.

35. As part of its re-classification, GM also stopped requiring its TOS employees to work "casual OT."

36. Despite subsequent requests from several TOS employees, GM refused to provide any back pay owed from the time the TOS employees' were misclassified as salaried exempt employees (*i.e.*, before March 2019).

37. The TOS employees' job duties did not change as part of GM's re-classification in March 2019.

38. In May 2020, GM again re-classified its TOS employees back to salaried exempt, which resulted in additional unpaid overtime wages.

39. On June 28, 2020, Plaintiff Scobey again complained to a GM Human Resources Supervisor about the misclassification scheme and the back pay owed by GM to the TOS employees.

40. The GM Human Resources Supervisor wrote back to Plaintiff Scobey and informed him that the re-classification of TOS employees to salaried exempt should not have occurred and that GM owed them back pay. However, GM failed

to provide its TOS employees with back pay resulting from the second misclassification in 2020.

## Unpaid Meal Periods

41. At all times relevant to this Complaint, GM's TOS employees were supposed to receive a full 30-minute unpaid and uninterrupted meal period.

42. However, Plaintiff Scobey and other TOS employees often worked a substantial amount of time during their unpaid meal periods and this work time went uncompensated by GM.

43. GM's payroll and TKS records show that GM automatically deducted 30 minutes from the TOS employees' paychecks on every shift.

44. In order to deduct an unpaid meal period from an employees' compensable time, the employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be ***completely relieved*** from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

45. GM failed to provide its TOS employees with bona fide meal periods.

46. The work performed by the TOS employees during their unpaid meal periods often took approximately 10-20 minutes per day, and sometimes the TOS employees worked through their entire 30-minute unpaid meal period.

47. GM's systemic practice resulted in their TOS employees not being paid for all time worked and for all of their overtime in violation of the FLSA.

48. GM knew Plaintiff Scobey and the other TOS employees were working during their unpaid meal periods because Scobey complained in writing on several occasions directly to a GM Human Resources Supervisor and to his immediate supervisor regarding the TOS employees working during unpaid meal periods.

49. Despite Plaintiff Scobey's complaints regarding unpaid meal periods, GM has not resolved the issue or otherwise paid the TOS employees for the work performed during unpaid meal periods.

**Regular Rate Calculation**

50. In addition to the unlawful pay practices described above, GM failed to calculate and pay its TOS employees at the correct overtime rate.

51. At all times relevant to this Complaint, GM provided shift premiums to its TOS employees who worked: (1) on or after 11am and before 7pm (5%); (2) on or after 7pm and before 4:45am (10%); and (3) after 4:45am and before 6am (10% until 7am).

9

52. At all times relevant to this Complaint, GM periodically provided non-discretionary bonuses to its TOS employees.

53. GM failed to take Plaintiff Scobey's and the other TOS employees' shift premiums and bonuses into consideration when calculating their regular rate of pay and resulting overtime rate premium. As a result, GM did not pay the proper overtime rate.

54. As non-exempt employees, Plaintiff Scobey and the other TOS employees were entitled to full compensation for all overtime hours worked at a rate of 1.5 times their "regular rate" of pay.

55. Under FLSA, the regular rate is the "keystone" to calculating the correct overtime rate. *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419 (1945). It is "the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed." 29 C.F.R. §778.108.

56. No matter how an employee is paid—whether by the hour, by the piece, on a commission, or on a salary—the employee's compensation must be converted to an equivalent hourly rate from which the overtime rate can be calculated. 29 C.F.R. §778.109. "The regular hourly rate of pay is determined by dividing the employee's total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by the employee in that workweek for which such compensation was paid." *Id*.

57. GM's shift premiums, overtime, and bonuses do not fall within any of the statutory exclusions from the regular rate as provided in 29 U.S.C. §§ 207(e)(1)-(8).

58. There is a statutory presumption that remuneration in any form must be included in the regular rate calculation. Employers carry the burden to establish that any payment should be excluded. *Madison v. Resources for Human Dev. Inc.*, 233 F.3d 187 (3rd Cir. 2000). Thus, determining the regular rate starts from the premise that all payments made to Plaintiffs for work performed are included in the base calculation unless specifically excluded by statute.

59. Once the total amount of an employee's "regular" compensation is deduced, "the determination of the regular rate becomes a matter of mathematical computation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945). The regular rate must be expressed as an hourly rate because, although any method of compensating an employee is permitted, the FLSA imposes its overtime requirements in terms of hourly wages. Thus, if necessary, an employer must convert an employee's wages to an hourly rate to determine compliance with the statute.

60. Plaintiffs' "total remuneration" included not only their salary pay, but also any shift premiums, overtime, and non-discretionary bonuses. Indeed, 29 C.F.R. § 548.502 provides that "[e]xtra overtime compensation must be separately

computed and paid on payments such as bonuses or shift differentials which are not included in the computation of the established basic rate…."

61. However, GM failed to incorporate its TOS employees' total remuneration into the regular hourly rate calculation, resulting in *prima facie* violations of the FLSA.

## FLSA COLLECTIVE ACTION ALLEGATIONS

62. At all times relevant to this Complaint, GM employed Plaintiffs as non-union, salaried TOS employees.

63. GM failed to pay its salaried TOS employee for all hours worked in excess of 40 per week, and also failed to pay overtime at 1.5 times their regular rate of pay.

64. At all times relevant to this Complaint, Plaintiffs were not exempt from the FLSA.

65. Accordingly, Plaintiff Scobey brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of:

> *All current and former Technical Operations Specialists who worked for GM at any time during the past three years.*

(referred to herein as the "Collective" or "Plaintiffs"). Plaintiffs reserve the right to amend this definition as necessary.

66. Excluded from the proposed Collective are GM's "white collar"

exempt employees, if any, including executives, administrative, and professional employees, computer professionals, and outside sales persons. Also excluded from the proposed Collective are any hourly union employees.

67. With respect to the claims set forth in this action, a collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff Scobey under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff Scobey brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are subject to the same or similar unlawful practices, policy, or plan; and (c) their claims turn on the same or similar factual and legal theories.

68. The employment relationships between GM and every Collective member are the same and differ only in name and rate of pay. The key issues – a policy and practice of failing to pay for all hours worked at the required overtime premium – does not vary from employee to employee.

69. The key legal issues are also the same for every Collective member, to wit: whether the Collective members were paid the required overtime wages due under the FLSA for all hours worked in excess of 40 per week.

70. Plaintiffs estimate that the Collective, including both current and former employees over the relevant period, will include dozens, if not hundreds, of

individuals. The precise number of individuals should be readily available from a review of GM's personnel and payroll records.

71. GM willfully engaged in a pattern of violating the FLSA, as described in this Complaint by suffering or permitting Plaintiffs to work in excess of 40 hours per week without paying the required overtime premium.

72. GM had express knowledge of the violations alleged herein and failed to resolve them.

73. GM's conduct constitutes a willful violation of FLSA within the meaning of 29 U.S.C. § 255(a).

74. The proposed Collective should be promptly notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

75. Unless the Court promptly authorizes such a notice to the proposed Collective, the members of which were unlawfully deprived of overtime pay under the FLSA, the statute of limitations may prevent them from securing unpaid overtime compensation to which they are entitled, and which has been unlawfully withheld from them by GM.

## **VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.*, FAILURE TO PAY OVERTIME**

76. Plaintiffs repeat and re-allege the preceding paragraphs as if fully stated herein.

77. At all times relevant to this Complaint, GM was an "employer" under

the FLSA, 29 U.S.C. § 203(d).

78. At all times relevant to this Complaint, Plaintiffs were "employees" of GM within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

79. At all times relevant to this Complaint, GM "suffered or permitted" Plaintiffs to work and thus "employed" them within the meaning of the FLSA, 29 U.S.C. § 203(g).

80. Plaintiffs either (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

81. At all times relevant to this Complaint, Plaintiffs were blue-collar workers and not exempt from the FLSA.

82. The FLSA requires an employer to pay non-exempt employees the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of 40 hours per workweek. 29 U.S.C. § 207.

83. Plaintiffs regularly worked over 40 hours per week while employed by GM.

84. At all times relevant to this action, GM required Plaintiffs to perform work during their unpaid meal periods, but failed to pay these employees the federally mandated overtime compensation for any of the work performed. As a result, GM owes Plaintiffs unpaid wages for the full 30 minutes of those unpaid

meal periods.

85. The off-the-clock work performed by Plaintiffs was an integral and indispensable part of their jobs and these activities and the time associated with these activities is not *de minimis*.

86. GM violated the FLSA by failing to pay Plaintiffs overtime compensation, at the rate of 1.5 times their regular hourly rate, for all hours worked in excess of 40 per workweek.

87. GM's violations of the FLSA were willful, with knowledge or reckless disregard of the statutory overtime requirements, as demonstrated by their failure to pay Plaintiffs the proper overtime premium for all hours worked in excess of 40 per week.

88. By failing to include all remuneration (*e.g.*, shift premiums, non-discretionary bonuses, etc.) into the regular rate calculation, GM failed to compensate its TOS employees properly under the FLSA.

89. As a result of the foregoing, Plaintiffs were injured and seek appropriate relief against GM including back pay, liquidated damages, reasonable attorneys' fees and costs, and all other relief just and appropriate in the circumstances.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff Scobey, on behalf of himself and all others

similarly situated, requests an order for relief as follows:

    a.    Conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA overtime claims set forth herein;

    b.    Ordering GM to disclose in computer format, or in print if no computer readable format is available, the names, addresses, and email addresses of all similarly situated individuals, and authorizing Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the them of their rights by law to join and participate in this lawsuit;

    c.    Designating Paul Scobey as the representative of the FLSA collective action and undersigned counsel as counsel for the FLSA collective;

    d.    Finding GM's FLSA violations were willful;

    e.    Granting judgment in favor of Plaintiffs and against GM and awarding Plaintiffs and the Collective members the full amount of damages and liquidated damages available by law;

    f.    Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as required by statute; and

    g.    Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiff, Paul Scobey, individually and on behalf of all others similarly situated, through his attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Date: August 4, 2020	Respectfully Submitted,

*/s/ Jesse L. Young*
Jesse L. Young (P72614)
KREIS ENDERLE, P.C.
8225 Moorsbridge, P.O. Box. 4010
Kalamazoo, Michigan 49003-4010
(269) 324-3000 (Tel.)
jyoung@kehb.com

18