IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PAUL SCOBEY**, on behalf of
himself and all similarly situated
employees,

              Plaintiff,

v.

**GENERAL MOTORS, LLC,** a
Michigan limited liability
company,

              Defendant.

Case No. 2:20-cv-12098-DPH-RSW
Hon. Denise Page Hood
Mag. Judge R. Steven Whalen

---

## <u>JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND DISMISSAL OF CASE WITH PREJUDICE</u>

The Parties, jointly, by and through their respective counsel, move this Court

for entry of the Order Approving FLSA Collective Action Settlement and Dismissal

of Case with Prejudice, or an order materially the same as proposed by the Parties,

which: (i) grants this motion and approves the Parties' Settlement Agreement; (ii)

appoints Jesse L. Young as class counsel; (iii) for purposes of settlement only,

certifies an FLSA Section 216(b) opt-in class of all individuals who worked for

General Motors, LLC or a subsidiary,  affiliate or joint venture of GM ("GM") as a

Technical Operations Specialist ("TOS") at GM Components Holdings, LLC's

Grand Rapids, Michigan facility and/or GM Manufacturing Subsystem's LLC's

Brownstown Michigan Battery Facility from August 4, 2017 through May 27, 2021;

(iv) authorizes Notice; and (v) dismisses this action with prejudice and without further costs or fees to any party.  In support of their Joint Motion, the Parties state as follows:

1.     On August 4, 2020, Plaintiff Paul Scobey filed a Complaint and Jury Demand initiating this action on behalf of himself and all other persons similarly situated, seeking damages for alleged violations of the Fair Labor Standards Act ("FLSA") (ECF No. 1).

2.     Plaintiff asserted claims for violations of the FLSA, including allegations that he and others similarly situated were misclassified as exempt employees and not properly paid overtime in accordance with the FLSA. Plaintiff sought unpaid overtime, liquidated damages, and attorneys' fees and costs. (ECF No. 1).

3.     In response to Plaintiffs' Complaint, Defendant filed an Answer denying Plaintiffs' allegations. (ECF No. 7).

4.     Subsequently, six additional employees filed consents to join and "opted-in" to this action as party plaintiffs (hereinafter, together with Paul Scobey, referred to as "Named Plaintiffs"). (ECF Nos. 3, 11).

5.     The parties thereafter agreed to seek to resolve this case through mediation and the informal exchange of documents and information.

6.     Pursuant to Fed. R. Evid. 408, the parties exchanged certain time records and payroll records and also exchanged analyses and calculations of potential damages.

7.     The parties mediated this case with experienced employment law mediator David Calzone (Calzone Mediations LLC) on April 28, 2021 and May 27, 2021.

8.     Over the course of two days of mediation, lasting a total of more than 20 hours, the Parties successfully negotiated a mutually agreeable arms' length resolution of the case.

9.     The resolution was reached on behalf of the Named Plaintiffs and the putative collective members, referred to as Potential Plaintiffs.

10.     The Parties' settlement includes an agreement to send Court-authorized Notice (which will include a Consent to Join, Release and Claim Form) (attached hereto as *Exhibit 1*)  to all Potential Plaintiffs, who the Parties agreed are defined as follows: "All individuals who worked for General Motors, LLC or a subsidiary, affiliate or  joint venture of GM ("GM") as a Technical Operations Specialist ("TOS") at GM Component Holdings, LLC's Grand Rapids, Michigan facility and/or GM Manufacturing Subsystems, LLC's Brownstown Michigan Battery Facility from August 4, 2017 through May 27, 2021."

11.     The Notice and Consent to Join, Release and Claim Form (***Exhibit 1***) will explain to Potential Plaintiffs the estimated amount of their settlement payment, and their options, including how to participate in the settlement if they choose to do so. The Notice also instructs Potential Plaintiffs that they may review the entire Settlement Agreement by contacting the Settlement Administrator as specified. *See id.*

12.     Pursuant to the Parties' Settlement Agreement, only those Potential Plaintiffs who choose to execute and return a Consent to Join, Release and Claim Form will become Opt-in Plaintiffs and receive payment under the Settlement Agreement and waive wage and hour claims. Potential Plaintiffs who choose not to return a Consent to Join, Release and Claim Form will not waive any claims and will not receive a payment. Any funds not claimed by Potential Plaintiffs will be retained by Defendant.

13.     Thereafter, the Parties negotiated the intricacies of their Settlement Agreement, and are now seeking: (i) this Court's approval of their settlement; (ii) appointment of Jesse L. Young as class counsel; (iii) for settlement purposes only, certification of an FLSA Section 216(b) opt-in class, as defined above, (iv) authorization of Notice, and (v) and dismissal of the case with prejudice.

14.     The Parties agree that the negotiated voluntary compromise is appropriate because the Parties recognize the costs and their respective risks

4

associated with proceeding with protracted, distracting, and expensive litigation on the various issues in contention.

15.     The significant material terms of the negotiated compromise are more fully discussed in the attached Memorandum in Support.  Additionally, due to GM's proposed confidentiality provision, a copy of the Parties' executed Settlement Agreement has been provided for the Court to review *in-camera*, in case review is necessary to satisfy any additional inquiries the Court may have.[1]

16.     The Settlement Agreement provides, *inter alia*: monetary payments to Opt-in Plaintiffs who choose to join this case following Court-authorized Notice, which will represent a fair percentage of their claimed damages in light of the legal and factual issues in this case; a proportionate general release payment to each of the Named Plaintiffs who will execute a general release; reimbursement of certain litigation costs; and a reasonable attorneys' fee to Plaintiffs' Counsel.  In exchange, Opt-in Plaintiffs agree to release Defendant from all wage and hour claims and dismiss this case with prejudice and without any further costs or fees.  Named Plaintiffs will also execute a general release of all claims.

---

[1] The Settlement Agreement will be submitted directly to chambers via secured electronic communication—clearly marked "For In Camera Review Only."  As stated, Potential Plaintiffs may review an unredacted copy of the Settlement Agreement by contacting the Settlement Administrator, as provided in the Notice. (***Exhibit 1***).

17.     The Parties agree that the Settlement Agreement is a fair and reasonable resolution and compromise of a *bona fide* dispute over issues arising under the Plaintiffs' FLSA claims.

WHEREFORE, Plaintiffs and Defendant, jointly, move this Court for entry of the Order Approving Stipulated FLSA Collective Action Settlement and Dismissal of Case with Prejudice, or an order materially the same as that proposed by the Parties, which: (i) grants this motion and approves the Parties' Settlement Agreement; (ii) appoints Jesse L. Young as class counsel; (iii) for purposes of settlement only, certifies an FLSA Section 216(b) opt-in class of all individuals who worked for General Motors, LLC or a subsidiary, affiliate or joint venture of GM ("GM") as a Technical Operations Specialist ("TOS") at GM Components Holdings, LLC's Grand Rapids, Michigan facility and/or GM Manufacturing Subsystem's LLC's Brownstown Michigan Battery Facility from August 4, 2017 through May 27, 2021; (iv) authorizes Notice; and (v) dismisses this action with prejudice and without further costs or fees to any party.

Respectfully submitted by the Parties:

s/ Jesse L. Young
Jesse L. Young (P72614)
KREIS ENDERLE, P.C.
P.O. Box 4010
Kalamazoo, MI  49003
T: 269-324-3000
jyoung@kehb.com

s/ Margaret Carroll Alli
Margaret Carroll Alli (P38281)
Lauren Zeldin (Ga. Bar No. 368999)
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, PLLC
34977 Woodward Avenue, Suite 300
Birmingham, MI 48009

6

T: 248-593-6400
meg.alli@ogletree.com
lauren.zeldin@ogletree.com

*Attorneys for Plaintiffs*

*Attorneys for Defendant*

Dated: July 16, 2021

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**PAUL SCOBEY**, on behalf of
himself and all similarly situated
employees,

         Plaintiff,

v.

**GENERAL MOTORS, LLC,** a
Michigan limited liability
company,

         Defendant.

Case No. 2:20-cv-12098-DPH-RSW
Hon. Denise Page Hood
Mag. Judge R. Steven Whalen

---

## MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT AND DISMISSAL OF CASE WITH PREJUDICE

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... iii

STATEMENT OF THE ISSUE PRESENTED ...................................... vii

MOST PERSUASIVE AUTHORITY .................................................. viii

I.   THE PARTIES' FLSA SETTLEMENT REPRESENTS A FAIR AND REASONABLE
     COMPROMISE OF BONA FIDE DISPUTES ................................................. 1

   1.  The Absence Of Fraud Or Collusion In The Settlement ............................ 3

   2.  Complexity, Expense, And Likely Duration Of The Litigation .................. 5

   3.  Amount Of Discovery Engaged In By The Parties ..................................... 7

   4.  The Likelihood Of Success On The Merits .................................................. 8

   5.  Opinions Of Class Counsel And Representatives ........................................ 9

   6.  The Reaction Of Absent Class Members ...................................................... 9

   7.  The Public Interest ....................................................................................... 10

II.  PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR NEGOTIATED
     ATTORNEYS' FEES AND COSTS ............................................................ 14

III. CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

*Andriello v. CFI Sales & Marketing, Inc.*,
2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) .......................................................4

*Arledge v. Domino's Pizza, Inc.,*
2018 U.S. Dist. LEXIS 179474, 2018 WL 5023950, at *4 (S.D.
Ohio Oct. 14, 2018) .........................................................................................16

*Arp v. Hohla & Wyss Ents., LLP,*
2020 U.S. Dist. LEXIS 207512, *3 (S.D. Ohio Nov. 5, 2020) .............15, 16, 18

*Arrington v. Mich. Bell Tel. Co.*,
2012 U.S. Dist. LEXIS 157362 (E.D. Mich., Nov. 2, 2012)................................3

*Baker v. ABC Phones of N.C.,*
2020 U.S. Dist. LEXIS 240695, *42 (W.D. Tenn. Dec. 22, 2020)....................13

*Belmont v. Homes of Opportunity, Inc.*,
2018 U.S. Dist. LEXIS 209920 (E.D. Mich. Dec. 13, 2018) .............................13

*Bradford v. Legacy Health Services*,
2014 WL 7185453 (N.D. Ohio, Dec. 16, 2014) .................................................11

*Brandenburg II,*
2019 WL 6310376 *6 .........................................................................................15

*China Agritech, Inc. v. Resh,*
_ U.S. _, 138 S. Ct. 1800, 1811, n.7, 201 L.Ed.2d 132 (2018) ........................13

*Cruthis v. Vision's,*
2014 WL 4092325 (E.D. Ark., Aug. 19, 2014)..................................................11

*Dillworth v. Case Farms Processing, Inc.*,
2010 WL 776933 (N.D. Ohio, March 8, 2010) ........................................4, 11, 13

*Does 1-2 v. Déjà Vu Services, Inc.*,
925 F.3d 886 (6th Cir. 2019) ...............................................................................3

*Dewald v. Time Warner Cable Inc.,*
2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021) .........................15

*Fegley v. Higgins*,
    19 F.3d 1126 (6th Cir. 1994) ...............................................................................14

*Gentrup v. Renovo Services, LLC*,
    2011 WL 2532922 (S.D. Ohio, June 24, 2011) ..................................................11

*Granada Invs., Inc. v. DWG Corp.*,
    962 F.2d 1203 (6th Cir. 1992) ...............................................................................3

*Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC*,
    2019 WL 2135648 (E.D. Mich., May 15, 2019) ................................................11

*Hadix v. Johnson*,
    322 F.3d 895 (6th Cir. 2003) ...............................................................................12

*Herbert v. Chesapeake Operating, Inc.*,
    2019 U.S. Dist. LEXIS 160792, 2019 WL 4574509, *4 (S.D. Ohio
    Sept. 20, 2019) .............................................................................................14, 15

*Hill v. Medicare Transport, Inc.*,
    2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019) ..................................................11

*In re Cardinal Health Inc. sec. Litig.*,
    528 F.Supp.2d at 752, 760, 761, 764 (S.D. Ohio 2007) ........................14, 15, 17

*Int'l Union, United Auto., Aerospace and Agr. Implement Workers of
    Am. v. General Motors Corp.*,
    497 F.3d 615 (6th Cir. 2007) .................................................................................3

*King v. Wells Fargo Home Mortg.*,
    2009 WL 2370640 (M.D. Fla., July 30, 2009) ...................................................11

*Lakosky v. Discount Tire Co., Inc.*,
    2015 WL 4617186 (E.D. Mich., July 31, 2015) .........................................1, 3, 11

*Lowther v. AK Steel Corp.*,
    2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5 (S.D.
    Ohio Dec. 21, 2012) ............................................................................................18

*Massey v. Tobler Construction, Inc.*,
    2013 WL 12167535 (M.D. Fla., Mar. 29, 2013) ................................................11

*McConnell,*
    2021 U.S. Dist. LEXIS 92836, at \*21 ............................................................15

*McFarlin v. Word Enters., LLC,*
    2020 U.S. Dist. LEXIS 154579, \*7 (E.D. Mich. May 27, 2020) ....................13

*Mitchell v. Indep. Home Care, Inc.,*
    2019 U.S. Dist. LEXIS 26464, 2019 WL 696941, \*7 (S.D. Ohio
    Feb. 2019) report and recommendation adopted, 2019 U.S. Dist.
    LEXIS 39104, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) ........................18

*Moore v. Aerotek, Inc.,*
    2017 U.S. Dist. LEXIS 102621, 2017 WL 2838148, \*8 (S.D. Ohio
    June 30, 2017) ...................................................................................................17

*Moore v. South Florida Restoration, Inc.*,
    2018 WL 6620872 (S.D. Fla., Nov. 16, 2018) ..................................................11

*Mullins v. S. Ohio Pizza, Inc.,*
    2019 U.S. Dist. LEXIS 11019, \*19 ...................................................................13

*NorCal Tea Party Patriots v. Internal Revenue Serv.,*
    2018 U.S. Dist. LEXIS 139769, 2018 WL 3957364, \*1 (S.D. Ohio
    Aug. 17, 2018) ..................................................................................................16

*Osman v. Grube, Inc.,*
    2018 WL 2095172, \*3 (N.D. Ohio May 4, 2018) .............................................16

*Pittman v. Matalco (U.S.), Inc.,*
    2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018) ..........................................11, 12

*Ramey v. Cincinnati Enquirer, Inc.,*
    208 F.2d 1188, 1196 (6th Cir. 1974) ..........................................................14, 16

*Smolinski v. Ruben & Michelle Enterprises, Inc.*,
    2017 WL 835592 (E.D. Mich., March 3, 2017) ................................................11

*Swigart v. Fifth Third Bank*
    2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, \*5-6 (S.D.
    Ohio July 11, 2014) ...........................................................................................15

*Thorn v. Bob Evans Farm,*
    2016 WL 8140448, \*2 (S.D. Ohio Feb. 26, 2016) .............................................16

*Wise v. Popoff*
    835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) .........................................15

*U.S. v. Rosenwasser*,
    323 U.S. 360 (1945).............................................................................................10

**Statutes**

29 U.S.C. § 216.......................................................................................................14

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

Should the Court approve the Parties' Fair Labor Standards Act collective action settlement where: (i) the Parties negotiated an arms' length resolution through an extensive mediation with a third-party mediator; (ii) the terms of the Parties' settlement are fair and reasonable; (iii) the Parties request for settlement purposes only that class counsel be appointed and an FLSA Section 216(b) opt-in class be certified, under which only putative class members who choose to opt-in will participate in the settlement and waive claims; and (iv) the Parties jointly request that the Court approve the settlement and authorize notice?

Plaintiffs Answer:          Yes.

Defendant Answers:          Yes.

# <u>MOST PERSUASIVE AUTHORITY</u>

*Cruthis v. Vision's*, 2014 WL 4092325 (E.D. Ark., Aug. 19, 2014)

*Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC,* 2019 WL 2135648 (E.D. Mich., May 15, 2019)

*Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019)

*King v. Wells Fargo Home Mortg.*, 2009 WL 2370640 (M.D. Fla., July 30, 2009)

*Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015)

*Pittman v. Matalco (U.S.), Inc.*, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018)

## I.     THE PARTIES' FLSA COLLECTIVE ACTION SETTLEMENT REPRESENTS A FAIR AND REASONABLE COMPROMISE OF BONA FIDE DISPUTES

As a general rule, "employees' claims under the FLSA are non-waivable and may not be settled without supervision of…a district court." *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186 (E.D. Mich., July 31, 2015). "Before this Court can approve the settlement of [p]laintiff's FLSA claim, the Court must determine that the parties were engaged in a *bona fide* dispute and that the settlement is a fair and reasonable compromise of the issues presented." *Id.*

In this matter, the Parties are resolving a *bona fide* dispute as to both the factual and legal underpinnings of Plaintiffs' claims.  Plaintiffs' claims are for alleged violations of the FLSA, including misclassification and failure to properly pay overtime. (ECF No. 1).

Although Defendant denied the allegations, the Parties agreed to resolve the dispute through compromise to avoid the burden and expensive of litigating the legal issues through conclusion, including but not limited to: (a) whether Plaintiffs were improperly classified as exempt employees; (b) whether Plaintiffs were properly paid for all time worked; (c) whether Defendant is entitled to any setoff for voluntary premium payments paid to Plaintiffs over and above their salaries; (d) whether liquidated damages are appropriate; and (e) whether collective action treatment is appropriate.

It is Defendant's position that Plaintiffs were properly classified as exempt and properly paid for all time worked. Defendant further avers that its actions were taken in good faith upon a reasonable belief that it was complying with the FLSA, thereby making liquidated damages inappropriate.  Defendant also disputes that collective action treatment is appropriate under the circumstances since, *inter alia*, each Plaintiffs' job duties would need to be analyzed individually because there is no common plan or scheme that results in an alleged FLSA violation.

Plaintiffs contend that they are blue-collar workers who were improperly classified as exempt and not properly paid for all time worked, including overtime. Plaintiffs also contend that liquidated damages are appropriate and that collective treatment is appropriate.

Instead of adjudicating these legal issues to a final conclusion through expensive, complex, and time-consuming litigation, the Parties have resolved the issues through a mutually acceptable compromise that is fair and reasonable which includes, for settlement purposes only, an agreement to stipulate to certification of an FLSA Section 216(b) opt-in class, defined as follows and hereinafter referred to as "Potential Plaintiffs":

> All individuals who worked for General Motors, LLC or a subsidiary, affiliate or joint venture of GM ("GM") as a Technical Operations Specialist ("TOS") at GM Component Holdings, LLC's Grand Rapids, Michigan facility and/or GM Manufacturing Subsystems, LLC's Brownstown Michigan Battery Facility from August 4, 2017 through May 27, 2021.

2

To determine whether a proposed FLSA settlement is fair and reasonable, courts consider, as applicable: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinion of class counsel and representatives; (6) the reaction of absent class members; and (7) public interest in the settlement. *Lakosky, supra; Does 1-2 v. Déjà Vu Services, Inc.*, 925 F.3d 886 (6th Cir. 2019) (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of Am. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)); *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992)).  This list is not exhaustive and courts do not necessarily apply all of the factors. Rather, the factors are guideposts used to determine the fairness of a proposed settlement.  "A court applying these factors must do so in the context of the actual settlement." *Arrington v. Mich. Bell Tel. Co.,* 2012 U.S. Dist. LEXIS 157362, *3 (E.D. Mich. Nov. 2, 2012). Analysis of these factors, under the circumstances, indicate that this settlement is both fair and reasonable.

### 1.  The Absence Of Fraud Or Collusion In The Settlement

There was no fraud or collusion in the Parties' settlement. The Parties reached an arms' length settlement of a *bona fide* dispute over the course of two days of mediation (totaling more than 20 hours) with an experienced, independent, and highly respected third-party mediator (David Calzone).  Throughout the process, the

Parties debated the merits and realities of the claims, defenses, and adjudicatory process.  Both sides' best interests were zealously represented by experienced and prepared counsel of their choosing.

As discussed, Plaintiffs' alleged damages in this matter consist of overtime pay which they claim they are entitled to, and liquidated damages, both of which Defendant disputes. The Settlement Agreement provides Plaintiffs with a fair portion of their disputed damages and attorneys' fees and costs.

As one court noted, the average recovery in class actions is seven (7%) to eleven (11%) percent of claimed damages.  *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio March 8, 2010) (discussing average class results while approving an FLSA settlement of 33% of claimed damages). In *Dillworth*, the court approved the fairness of the parties' confidential settlement, calling it "exceptional" because it exceeded that average.  Here, the recovery to Plaintiffs, including the Named Plaintiffs and those Potential Plaintiffs who chose to participate in this settlement by filing a Consent to Join, Release and Claim Form, will similarly easily exceed that average pursuant to the Parties' calculations, and, for the reasons articulated in *Dillworth,* warrants approval.  The recovery to Plaintiffs in this settlement pursuant to the parties' calculations also exceeds the 3% recovery approved by other courts in FLSA cases.  *See*, e.g., *Andriello v. CFI Sales &*

*Marketing, Inc.*, 2012 WL 3264920 (M.D. Fla., Jan. 4, 2012) (approval of a settlement resulting in a 3% recovery of claimed damages).

The Parties' settlement also provides each Named Plaintiff with an additional General Release Payment, commensurate with their individual payments, in recognition of their active participation in the lawsuit, as well as their execution of a general release of all claims. As the Court can see, the General Release Payments are not indicative of any collusion or fraud given their relatively low amounts.

The Parties' settlement eliminates the risks and costs both sides would bear if this litigation continued, including litigation over conditional certification, expert witness damages calculations, potential decertification of the collective (potentially resulting in multiple individual actions), and/or complete adjudication on the merits through trial, final judgment, and potential appeals. In agreeing upon the proposed settlement, the Parties had sufficient information and conducted an adequate investigation to allow them to make an educated and informed analysis and conclusion as to the strengths and weaknesses of Plaintiffs' claims in comparison to their respective costs and the risks associated with further drawn-out litigation. The Parties agree, for their own independent reasons, that settlement was appropriate.

### 2. <u>Complexity, Expense, and Likely Duration Of The Litigation</u>

The complexity, expense, and length of continued litigation militate in favor of this settlement. Plaintiffs' claims are complex in theory and factually nuanced.

The Plaintiffs, including the Named Plaintiffs and Potential Plaintiffs, held a position called Technical Operations Specialist or "TOS." Plaintiffs contend that the TOS employees were blue-collar workers and non-exempt under the FLSA regardless of their compensation structure. While TOS was a moniker shared by all Plaintiffs, Defendant contends that, in reality, many TOS employees had distinct roles and differing job duties, resulting in the potential application of a number of exemptions including the executive, administrative, highly compensated, professional, and/or combination exemptions, in addition to different roles held by TOS at the two distinct facilities at issue. Further, the amount of voluntary premium pay paid to Plaintiffs above and beyond their salaries raises complex legal questions regarding a setoff defense should it be determined that Plaintiffs were owed any overtime.

The settlement of these complex claims and proofs is in the Parties' best interests. Should this matter continue, the Parties would need to complete significant discovery consisting of dozens of depositions and voluminous written discovery and document production. Expert witnesses would be retained to sort through the complexities of the pay data. The Parties would then need to brief and argue the competing sides of a motion for conditional certification, a potential decertification motion, and then a motion for summary judgment. Based on the resultant rulings, if necessary, the Parties would then have to prepare for and put on a complex and

lengthy jury trial.  This case would surely proceed for many more months, if not years.

If Plaintiffs ultimately prevailed at trial by proving that the FLSA was violated, Defendant would be faced with the prospect of a verdict against it and the obligation to pay Plaintiffs full attorneys' fees and costs.  If Defendant ultimately prevailed, Plaintiffs would face dismissal of their claims and no recovery of liquidated damages, attorneys' fees, or costs.  The Parties compromised to avoid either extreme outcome.  This settlement is a reasonable means for the Parties to minimize or altogether avoid future time expended, risks, and litigation costs.

### 3. <u>Amount Of Discovery Engaged In By The Parties</u>

The Parties engaged in an informal exchange of documents and information consisting of payroll and timekeeping data, as well as exchanges and discussions of their respective analyses of damages —providing them a well-informed basis to evaluate their respective claims and defenses before deciding to compromise on resolution of this matter.

The Parties reviewed all of the exchanged and available information and used it to evaluate the merits of their respective claims or defenses in comparison to the costs and risks associated with further litigation.  The Parties also shared settlement analyses of damages which they used to calculate the arrived-at settlement value for

this case, adjusted for the purposes of compromise in light of the risks and costs associated with proceeding.

### 4.     <u>The Likelihood Of Success On The Merits</u>

The likelihood of Plaintiffs' success on the merits, and the amount they would be awarded, is uncertain, further suggesting that this settlement is fair and appropriate.  Plaintiffs assert, and Defendant denies, that they are each entitled to overtime pay and liquidated damages going back to August 4, 2017.  However, this is a fact-intensive inquiry that is premised on a conclusion that all Plaintiffs, including the Named Plaintiffs and Potential Plaintiffs, were improperly classified as exempt employees and that they actually worked overtime for which they were not already compensated through voluntary premium payments, which Defendant denies.

Additionally, Plaintiffs contend that the alleged misclassification of the Plaintiffs was the result of a common plan or scheme and that each Plaintiff was similarly situated with respect to the administration of that scheme.  This is a material issue which also remains in dispute and which would have been challenged through a motion to conditionally certify and/or decertify the collective action, prior to dispositive motions, if compromise was not reached.  If conditional certification were denied or decertification granted, Defendant could face a large number of individual lawsuits.

Nonetheless, if Plaintiffs succeeded on the merits, which would require substantial additional time and resources, the Parties agree that the specific amount of any recovery is uncertain. Defendant continues to deny any and all liability or wrongdoing with respect to Plaintiffs' allegations and theory of liability. Thus, this proposed settlement is a fair and reasonable settlement in relation to the potential risks and uncertain recovery in this case.

### 5.   Opinions Of Class Counsel And Representatives

Plaintiffs' Counsel is of the opinion that the Settlement Agreement contains a fair and reasonable compromise of the disputed issues for all the reasons stated in this Joint Motion and the attached attorney Declaration. Moreover, as evidenced by their signatures, the Named Plaintiffs believe that the Settlement Agreement contains a fair and reasonable compromise of the disputed issues and provides for recovery prior to a long, drawn out adjudication of this case's merits.

### 6.   The Reaction Of Absent Class Members

Because this is an opt-in FLSA collective action, there are no absent class members. Potential Plaintiffs who decide to opt-in to this lawsuit through filing a Consent to Join, Release and Claim Form following approval of the Parties' settlement and issuance of Court authorized Notice will agree to be bound by the settlement. Potential Plaintiffs who choose not to execute and return a Consent to

Join, Release and Claim Form will not participate in the settlement and will not waive any claims.

**7.**     **The Public Interest**

The public interest is served by the proposed settlement as it implicitly serves the purpose and intent of Congress in enacting the FLSA—"to raise substandard wages and to give additional compensation for overtime work … thereby helping to protect this nation 'from the evils and dangers resulting from wages too low to buy the bare necessities of life and from long hours of work injurious to health.'" *U.S. v. Rosenwasser*, 323 U.S. 360, 361 (1945) (*quoting* Sen. Rep. No. 884 (75th Conf., 1st Sess.)).  While Plaintiffs earn well above a substandard wage, the Parties recognize that the exemption status was disputed in this case, and Congressional intent has been achieved where Plaintiffs were able to pursue their claims with competent and experienced counsel.

The public's interest has been satisfied by the Settlement Agreement despite it not being publicly filed.[2]  Where confidentiality is important to one or both of the parties, Courts are permitted to evaluate the fairness and reasonableness of the Parties' settlement without requiring the settlement agreement to be publicly filed.

---

[2] If the Court prefers, the parties are willing to submit the settlement agreement with only the dollar amounts of the various payments redacted. As stated above, the Potential Plaintiffs may review the entire Settlement Agreement (unredacted) by contacting the Settlement Administrator as specified in the Notice (***Exhibit 1***).

*See,* e.g., *Lakosky v. Discount Tire Co., Inc*., 2015 WL 4617186 (E.D. Mich., July 31, 2015); *Griffin v. Lady Jane's Haircuts for Men Holding Company, LLC,* 2019 WL 2135648 (E.D. Mich., May 15, 2019); *Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio, Mar. 8, 2010); *Pittman v. Matalco (U.S.), Inc.*, 2018 WL 6567801 (N.D. Ohio, Dec. 13, 2018); *Bradford v. Legacy Health Services,* 2014 WL 7185453 (N.D. Ohio, Dec. 16, 2014); *Hill v. Medicare Transport, Inc.*, 2019 WL 5425167 (N.D. Ohio, Oct. 22, 2019); *Gentrup v. Renovo Services, LLC*, 2011 WL 2532922 (S.D. Ohio, June 24, 2011); *Cruthis v. Vision's*, 2014 WL 4092325 (E.D. Ark., Aug. 19, 2014); *Moore v. South Florida Restoration, Inc.*, 2018 WL 6620872 (S.D. Fla., Nov. 16, 2018); *Massey v. Tobler Construction, Inc.*, 2013 WL 12167535 (M.D. Fla., Mar. 29, 2013); *King v. Wells Fargo Home Mortg.*, 2009 WL 2370640 (M.D. Fla., July 30, 2009).[3]

---

[3] Candidly, courts in this district and elsewhere have also refused to review settlement agreements confidentially.  See, for example, *Smolinski v. Ruben & Michelle Enterprises, Inc.*, 2017 WL 835592 (E.D. Mich., March 3, 2017).  However, Defendant submits that those cases are distinguishable.  In *Smolinski¸* and similar cases, the parties attempted to shield the entire agreement and all of its terms from the public.  Here, that is not the case.  The material terms of the Parties' settlement agreement are being fully disclosed through this motion, including the relative reasonableness of the amounts being paid.  The only terms not being disclosed are the actual dollar amounts of the payments.  Defendant is unaware of any case specifically holding that in the presence of such broad disclosure, the parties still must publicly disclose the actual dollar amounts being paid. Doing so under the circumstances would add little.  *Pittman, supra.*

Defendant's request for *in camera* review would not conceal the existence of a settlement from the public, or even the material terms of the settlement. Indeed, this Motion is being filed publicly and discloses all significant material terms of the Settlement Agreement, except for the specific payment amounts. As the *Pittman* court noted, since there are multiple issues in dispute that are being resolved in the Parties' settlement, the public would "stand to learn little about the value of any given FLSA dispute by viewing the terms of the settlement agreement." *Pittman,* at *2. The same holds true here where the only terms not being disclosed are the actual dollar amounts of the payments. This Motion provides the public sufficient information to evaluate the fairness of the Parties' compromise without seeing the agreement itself.

Plaintiffs are receiving a fair percentage of their claimed damages in light of the legal and factual issues presented. The Named Plaintiffs will receive a reasonable General Release Payment (for service to the collective and execution of a general release) that nonetheless falls far short of any windfall that could possibly suggest collusion. Service "awards are efficacious ways of encouraging members of a class to become class representatives and rewarding individual efforts taken on behalf of the class." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (reviewing such awards under an abuse of discretion standard). The Supreme Court recently recognized that a class representative "might receive a share of class recovery above

12

and beyond her individual claim." *China Agritech, Inc. v. Resh*, __ U.S. __, 138 S. Ct. 1800, 1811, n.7, 201 L.Ed.2d 123 (2018). It is important to compensate the work and additional risk that class representatives takes on, particularly in a wage and hour lawsuit. As such, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Dillworth, supra; Belmont v. Homes of Opportunity, Inc.*, 2018 U.S. Dist. LEXIS 209920, *5 (E.D. Mich. Dec. 13, 2018).[4]

In exchange for these payments, Plaintiffs are dismissing this case with prejudice and without any further costs or fees to any party. While Named Plaintiffs are releasing all claims, Opt-in Plaintiffs are only providing a limited release to Defendant, and the other released parties, covering any and all wage-and-hour claims. Of course, no Plaintiff has waived any claim that cannot be waived under the law. The public can clearly see that this is a fair and reasonable settlement in light of the risks presented by continued adjudication.

---

[4] *See e.g., McFarlin v. Word Enters., LLC*, 2020 U.S. Dist. LEXIS 154549, *7 (E.D. Mich. May 27, 2020) (approving $10,000.00 to lead named Plaintiff and $5,000.00 each to two other plaintiffs for their service to the FLSA collective); *Baker v. ABC Phones of N.C.*, 2020 U.S. Dist. LEXIS 240695, *42 (W.D. Tenn. Dec. 22, 2020) (approving $10,000 service awards for the two named plaintiffs); *Mullins v. S. Ohio Pizza, Inc.*, 2019 U.S. Dist. LEXIS 11019, *19 (approving $10,000 service award in FLSA case).

13

## II.   PLAINTIFFS' COUNSEL SHOULD BE AWARDED THEIR NEGOTIATED ATTORNEYS' FEES AND COSTS

Section 216(b) of the FLSA provides that "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  An award of attorneys' fees to a prevailing plaintiff under § 216(b) of the FLSA is mandatory, but the amount of the award is within the discretion of the judge. *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994).

When assessing the reasonableness of a fee award, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

### a.   The Court should adopt the percentage approach.

In the Sixth Circuit, district courts may award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. This flexible approach allows the Court to account for the unique and varied circumstances present in each class action.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Hebert v. Chesapeake*

*Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, 2019 WL 4574509, *4 (S.D. Ohio Sept. 20, 2019) (*quoting Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, 2014 WL 3447947, *5-6 (S.D. Ohio July 11, 2014)). "Absent compelling reasons to the contrary," courts apply the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, 2021 U.S. Dist. LEXIS 32459, *16 (S.D. Ohio Feb. 16, 2021). "[T]he percentage approach encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.* As such, absent compelling reasons to the contrary, the percentage method is "preferred." *Arp v. Hohla & Wyss Ents., LLP*, 2020 U.S. Dist. LEXIS 207512, *3 (S.D. Ohio Nov. 5, 2020); *Wise v. Popoff*, 835 F. Supp. 977, 980 (E.D. Mich. March 25, 1993) ("[F]ee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Hebert v. Chesapeake Operating, Inc.*, 2019 WL 4574509, *8 (N.D. Ohio Sept. 20, 2019) (stating "33% is typical for attorney's fees in common fund, FLSA collective actions in this District..."); *see also Brandenburg II*, 2019 WL 6310376, *6; *McConnell*, 2021 U.S. Dist. LEXIS

92836, at *21; *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512,

*22 (S.D. Ohio Nov. 5, 2020); *Osman v. Grube, Inc.*, 2018 WL 2095172, *3 (N.D.

Ohio May 4, 2018); *Thorn v. Bob Evans Farm*, 2016 WL 8140448, *2 (SD. Ohio

Feb. 26, 2016) (awarding 32.92% of common fund).  Here, the Court should use the

preferred method in this district and award a percentage-of-the-fund.

     **b.**    **The *Ramey* Factors**

    To ensure a fee is reasonable, courts also analyze the six factors set forth by

the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th

Cir. 1974). The *Ramey* factors include: (1) the value of the benefits rendered to the

class; (2) society's stake in rewarding attorneys who produce such benefits in order

to maintain an incentive to others; (3) whether the services were undertaken on a

contingent fee basis; (4) the value of the services on an hourly basis

(the lodestar cross-check); (5) the complexity of the litigation; and (6) the

professional skill and standing of counsel on both sides. *Arledge v. Domino's Pizza,

Inc.*, 2018 U.S. Dist. LEXIS 179474, 2018 WL 5023950, at *4 (S.D. Ohio Oct. 17,

2018). There is not a formula for weighing the factors. *See NorCal Tea Party

Patriots v. Internal Revenue Serv.*, 2018 U.S. Dist. LEXIS 139769, 2018 WL

3957364, *1 (S.D. Ohio Aug. 17, 2018). Moreover, "the Court should be mindful

that each case presents a unique set of circumstances and arrives at a

unique settlement, and thus different factors could predominate depending on the

case." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 764. Here, each of these factors weighs in favor of granting the requested fees and costs.[5]

First, Class Counsel's work resulted in a significant benefit to collective members whereby each member will receive a substantial settlement payment. To receive this money, putative collective members only need to submit a consent form, which is provided to them by a third-party settlement administrator, along with an return envelope and pre-paid postage. The Court should find that this is an excellent result that supports the proposed fee award.

Second, the Court should find that there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources. The attorneys who take on class action cases enable this. *See Moore v. Aerotek, Inc.*, 2017 U.S. Dist. LEXIS 102621, 2017 WL 2838148, *8 (S.D. Ohio June 30, 2017) (citation omitted). The societal benefit is particularly acute in wage-and-hour cases brought on behalf of workers.  In order for attorneys to take on these cases, which, in the class and collective action setting, are complex and difficult cases, attorneys must be fully compensated for their work. Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own. *Id.* (citation omitted).

---

[5] Defendant takes no position on Plaintiffs' request for the attorneys' fees and costs provided in the Settlement Agreement—per the Agreement's terms.

Third, Class Counsel litigated this matter on a wholly contingent basis with no guarantee of recovery. This supports the proposed fee award.

Fourth, a lodestar cross-check, while not required, also supports Plaintiffs' counsel's fee request. *Mitchell v. Indep. Home Care, Inc.*, 2019 U.S. Dist. LEXIS 26464, 2019 WL 696941, *7 (S.D. Ohio Feb. 20, 2019), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 39104, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019). Under the lodestar calculation, the Court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. Plaintiffs' Counsel has submitted a detailed Declaration in support of the requested attorneys' fees and costs. (***Exhibit 2***, Declaration of Jesse L. Young).

The Court should also be aware that Class Counsel's work does not end at upon settlement approval. Class Counsel frequently spends additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters, and such additional work is expected in this case.

The multiplier on Class Counsel's lodestar is approximately 3.1 before accounting for any additional work. This is within the acceptable range. *See Lowther v. AK Steel Corp.*, 2012 U.S. Dist. LEXIS 181476, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable); *Arp*, 2020 U.S. Dist.

LEXIS 207512 at *19 (S.D. Ohio Nov. 5, 2020) (approving lodestar multiplier of 5.29). Indeed, given the nature of a contingent fee, a multiplier is generally necessary to attract competent counsel to take on the risk and expense of representing workers who are unable to afford representation on an hourly basis. This is particularly true in wage cases like this one, which are inherently complex, difficult, and expensive to litigate. The Court notes that the employer-defendant was represented by highly competent and skilled counsel. Employee-plaintiffs require equally proficient representation.

Fifth, as noted above, this was a complex wage and hour class/collective action. The Court should find that this factor weighs in favor of approving the fee.

Sixth, and finally, Plaintiffs and Defendant are represented by experienced counsel. All counsel are highly qualified and have substantial experience in federal courts and class action litigation. Counsels' professional skill and standing support approving the fee.

For these reasons, the Court should determine that the requested fees and costs are reasonable, and approve the request for fees and costs equal to one-third of the Gross Fund.

## III. CONCLUSION

Plaintiffs and Defendant agree that the Parties' settlement is a fair and reasonable resolution of a *bona fide* dispute over FLSA issues. As such, the Parties

jointly request that this Court enter an Order Approving Stipulated FLSA Collective Action Settlement and Dismissal of Case with Prejudice, or an order materially the same as that proposed by the Parties.

Dated:  July 16, 2021                                Respectfully submitted by:


*s/ Jesse L. Young*                              *s/ Margaret Carroll Alli*
Jesse L. Young (P72614)                   Margaret Carroll Alli (P38281)
KREIS ENDERLE, P.C.                      Lauren Zeldin (Ga. Bar No. 368999)
P.O. Box 4010                                    OGLETREE, DEAKINS, NASH,
Kalamazoo, MI  49003                      SMOAK & STEWART, PLLC
T: 269-324-3000                                34977 Woodward Avenue, Suite 300
jyoung@kehb.com                             Birmingham, MI 48009
                                                          T: 248-593-6400
*Attorneys for Plaintiffs*                    meg.alli@ogletree.com
                                                          lauren.zeldin@ogletree.com

                                                          *Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2021, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, thereby serving all counsel of record.

                                                   */s/ Jesse L. Young*
                                                   jyoung@kehb.com